**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

**ERIC MONROE**, an Individual,

      Plaintiff,

v

**CELLCO PARTNERSHIP d/b/a VERIZON
WIRELESS,** a Delaware Corporation,

      Defendant.
_____/

SOMMERS SCHWARTZ, P.C.
By: Tad T. Roumayah (P74081)
Attorneys for Plaintiff
One Towne Square, Suite 1700
Southfield, Michigan 48076
troumayah@sommerspc.com
_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

**NOW COMES** Plaintiff, ERIC MONROE ("MONROE"), by and through his attorneys, SOMMERS SCHWARTZ, P.C., and for his Complaint against Defendant, CELLCO PARTNERSHIP d/b/a VERIZON WIRELESS (hereinafter referred to as "VERIZON"), states as follows:

## PARTIES

1. Plaintiff, MONROE, is an individual residing in the City of Dearborn, Wayne County, Michigan.

2. Defendant, VERIZON, is incorporated in the State of Delaware and conducts business in the City of Allen Park, Wayne County, Michigan.

## JURISDICTION AND VENUE

3. The controversy in this civil action is within the jurisdiction of this Court pursuant to 28 U.S.C. § 1331.

4. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391. Specifically:

   a. VERIZON conducts regular, continuous, and systematic business activities, and has a real presence in Wayne County, Michigan.

   b. The acts of unlawful discrimination and retaliation under which this cause of action arises occurred in Wayne County, Michigan.

## GENERAL ALLEGATIONS

5. According to Bloomberg.com, VERIZON:

   [P]rovides wireless, residential, and business telecommunications products and services. It offers voice and data, business, small business, flexible business, machine-to-machine, and international services; smartphones, plans, tablets, accessories, and deals; phones and devices; and accessories, such as cases and protection products, batteries and chargers, audio products, car and travel products, smart home products, smartwatches, sports and fitness products, photography products, gaming and toys, everyday essentials, signal boosters, and gift

>cards. The company also provides employee discounts, device recycling program, and business promotions; TV, Internet, and home phone bundles; customer care; smartphones for businesses; apps for business, mobile broadband, mobile devices, mobile office, mobile POS, and push to talk solutions; and cloud management, asset tracking, mobile security, business continuity, smart vending, and digital signs. It serves construction, professional services, retail, transportation, and distribution industries; serves various retail connections; and operates retail stores in the United States. The company was founded in 1994 and is based in Basking Ridge, New Jersey. Cellco Partnership, Inc. operates as a subsidiary of Verizon Communications Inc.

https://www.bloomberg.com/research/stocks/private/snapshot.asp?privcapId=3589977

6. VERIZON maintains a retail store location in Allen Park, Michigan.

7. MONROE worked for VERIZON for over a decade until the company fired him on May 20, 2016.

8. Most recently, MONROE held the position of Solutions Specialist at VERIZON's Allen Park, Michigan retail store location.

9. MONROE's job duties as Solutions Specialist included, but were not limited to, analyzing customer needs and presenting value-added solutions, providing customers with a basic understanding of the functionality of the products and accessories they purchase, and delivering customer service.

10. At all times, MONROE was dedicated to his position at VERIZON and he performed his job in an exemplary manner.

11. From 2008 through 2015, MONROE received overall annual performance ratings of either "Leading" or "Performing" (the two highest possible performance ratings at VERIZON) in connection with each of his annual performance evaluations.

12. On or about April 2015, Marlo Green became MONROE's direct supervisor. On MONROE's 2015 Mid-Year review dated July 7, 2015, Mr. Green wrote:

   a. "MONROE has been in his role for some time now."
   b. "He has a high competency for the job and his responsibilities."
   c. "He is at the point of mastery level and ready to take it to the next step. . ."

13. Mr. Green rated MONROE as "Performing" on his 2015 year-end review, dated February 11, 2016.

14. At the time of his termination, MONROE earned an annual compensation of over $72,000 together with various fringe benefits.

15. Due to his exceptional performance, MONROE received numerous bonuses and merit pay increases (including most recently in 2015).

16. MONROE suffers from the mental disabilities of depression and anxiety.

17. On or about May 3, 2015, MONROE fell and hit his head on the ground, which resulted in the attending physician at Oakwood Hospital diagnosing MONROE with two brain hemorrhages and a left occipital bone fracture.

18. Subsequently, on May 17, 2015, Dr. Asish Deshpande, MONROE's physical medicine and rehabilitation physician, diagnosed MONROE with intensified anxiety and depression stemming from his head injuries.

19. As a result of his head injury, MONROE required approximately one month of approved Family and Medical Leave Act ("FMLA") leave in May 2015.

20. MONROE returned to work on or about June 1, 2015.

21. MONROE continued to suffer from anxiety and depression through the date that VERIZON terminated his employment.

22. Despite MONROE's disabilities, he was and is at all times able to perform the essential functions of his job at VERIZON.

23. At all relevant times, MONROE's VERIZON managers (including Mr. Green and assistant managers Tyrone Player and Hussein Barro) and its human resource department were aware of MONROE's anxiety and depression disabilities.

24. In the months leading up to his termination, MONROE indicated to his supervisor Mr. Green that he (MONROE) was suffering from severe depression and that he was receiving treatment for his depression.

25. In response, Mr. Green admonished MONROE to "leave that stuff at home" in reference to MONROE's depression and anxiety.

26. Mr. Green admonished MONROE to "get over it" in reference to MONROE's depression and anxiety.

27. Mr. Green inquired how MONROE could "be stressed out with such an easy job?" referencing MONROE's depression and anxiety.

28. In December 2015, after learning of MONROE's depression and anxiety disabilities, VERIZON management began scrutinizing MONROE and disciplining him for alleged attendance problems.

29. On December 26, 2015, Mr. Green provided MONROE with a "Final Written Warning-Code of Conduct," regarding his alleged attendance problems.

30. MONROE vigorously disputes Mr. Green's characterization of his attendance in the fall of 2015.

31. On or about January 20, 2016, VERIZON management raised with MONROE that an "unauthorized upgrade" to a new mobile phone had been processed on a customer's account.

32. VERIZON alleged that the "unauthorized upgrade" was performed under a sales code belonging to MONROE.

33. No evidence was ever set forth by VERIZON showing that it was in fact MONROE who had processed the "unauthorized upgrade."

34. As noted above, on February 11, 2016, Mr. Green provided MONROE with his 2015 year-end review and Green rated MONROE as "Performing," which is the second highest performance rating at VERIZON.

35. Mr. Green never addressed the "unauthorized upgrade" issue in MONROE's year-end review.

36. Furthermore, MONROE never received any discipline (e.g. verbal counseling, written counseling, etc.) of any kind in reference to the "unauthorized upgrade" issue.

37. On or about April 29, 2016, MONROE treated with his family physician, Dr. Jalal Thwainey, for anxiety and depression.

38. That same day, and pursuant to Dr. Thwainey's recommendation, MONROE requested and availed himself of a 4-week medical leave under the FMLA to obtain necessary treatment for his anxiety and depression, with a return to work date set for May 22, 2016.

39. Just over one week after MONROE began his FMLA leave, Robyn Robinson, VERIZON's human resource representative, phoned MONROE.

40. During the telephone call, Ms. Robinson began to interrogate MONROE about the "unauthorized upgrade" issue that had allegedly taken place months earlier (and which was never mentioned in MONROE's 2015 performance review or in any other document provided to MONROE by VERIZON).

41. At the end of the telephone discussion, Ms. Robinson assured MONROE that the phone call "wasn't a big deal," and hung up.

42. Approximately one week later, on May 20, 2016 (while MONROE was still out on FMLA-approved medical leave), Ms. Robinson and Mr. Green called MONROE and informed him that he was being terminated, effective immediately.

43. Ms. Robinson and Mr. Green advised MONROE that he was being terminated because of the "unauthorized upgrade" issue.

44. Ms. Robinson referenced her prior phone call with MONROE as support for his termination.

45. VERIZON never provided MONROE with termination paperwork, nor did it provide MONROE with any formal discipline regarding the "unauthorized upgrade" issue.

46. VERIZON terminated MONROE on May 20, 2016, while he was still on a FMLA-protected leave.

47. VERIZON terminated MONROE because of his depression and anxiety disabilities and because he availed himself of FMLA-protected leave.

48. VERIZON's "unauthorized upgrade" allegation is mere pretext being used by VERIZON to cover up its illegal termination of Mr. Monroe.

49. VERIZON has disciplined other employees similarly situated to MONROE (and who were not disabled and did not avail themselves of FMLA-

protected leave) for the same or similar conduct as the "unauthorized upgrade" issue, however VERIZON never fired those similarly situated employees.

50. On or about August 11, 2017, MONROE filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), asserting that VERIZON violated the Americans with Disabilities Act ("ADA") by discriminating and retaliating against him because of his mental disabilities.

51. On or about March 24, 2017, the EEOC issued MONROE a Notice of Right to Sue letter relating to his Charge of Discrimination under the ADA, which MONROE received on or about March 28, 2017.

## COUNT I:
## VIOLATION OF THE AMERICANS WITH DISABILITIES ACT, 42 U.S.C. § 12101 *et seq.*

52. MONROE incorporates Paragraphs 1 through 51 of this Complaint.

53. The Americans with Disabilities Act ("ADA") prohibits VERIZON from discriminating against a qualified individual with a disability in regard to hiring, advancement, discharge, compensation, and other terms, conditions, and privileges of employment. 42 U.S.C. § 12112(a).

54. MONROE is a person with a disability as defined by 42 U.S.C. § 12102(1).

55. MONROE has physical, mental and/or psychological impairments that substantially limit one or more major life activities.

56. MONROE is otherwise qualified for his position with VERIZON with or without a reasonable accommodation.

57. MONROE engaged in protected activity under the ADA when he requested a reasonable accommodation to take medical leave as a result of his disabilities.

58. VERIZON violated MONROE's civil rights under the ADA by discriminating against him because of his disabilities and retaliating against MONROE for engaging in protected activity under the ADA in the following respects:

    a. Subjecting MONROE to discipline.

    b. Terminating MONROE's employment.

    c. Discriminating against MONROE with respect to the terms, conditions, or privileges of employment including, but not limited to, taking adverse employment action against and ultimately firing MONROE because of his disabilities.

    d. Refusing to accommodate MONROE's disabilities, which accommodation would not have imposed an undue hardship on VERIZON.

    e. Retaliating against MONROE in response to his request for a reasonable accommodation.

    f. Treating MONROE differently than employees who were not disabled and/or engaging in a pattern and practice of discrimination.

59. There is a causal connection between MONROE's disability and/or protected activity under the ADA and VERIZON's adverse employment actions.

60. VERIZON's reason for its adverse employment decision was pretextual in nature.

61. VERIZON knowingly and deliberately engaged in intentional acts of discrimination and violations of the ADA and further, acted with malice and/or with reckless indifference to MONROE's rights under the ADA.

62. As a direct and proximate result of VERIZON's adverse actions, MONROE has suffered damages, including but not limited to loss of past and future income and employee benefits, physical injuries, mental anxiety and emotional distress, and loss of professional reputation.

**WHEREFORE**, Plaintiff, ERIC MONROE requests that this Court enter its Judgment against Defendant, VERIZON COMMUNICATIONS INC., in whatever amount is shown to be established by the proofs in this cause, together with lost wages, compensatory damages, punitive damages, interest, costs, and attorney fees, as well as any equitable relief shown to be established by the proofs in this cause.

**DEMAND FOR TRIAL BY JURY IS HEREBY MADE.**

### COUNT II: VIOLATION OF FAMILY MEDICAL LEAVE ACT, 29 U.S.C. § 2601 *et seq.* — INTERFERENCE

63. MONROE incorporates Paragraphs 1 through 51 of this Complaint.

64. It is unlawful under the Family and Medical Leave Act, 29 U.S.C. § 2601 *et seq.* ("FMLA") for any employer to interfere with, restrain, or deny the

exercise of or the attempt to exercise, any right provided under the FMLA. 29 U.S.C. § 2615.

65. MONROE was an eligible "employee" as defined by the FMLA. 29 U.S.C. § 2611(2)(B)(ii).

66. Defendant, VERIZON, is an "employer" as defined by the FMLA. 29 U.S.C. § 2611(4).

67. Under the FMLA, MONROE was entitled to twelve (12) weeks of job-protected medical leave for any twelve (12) month period. 29 U.S.C. § 2612(a)(1).

68. MONROE provided notice to VERIZON as soon as practicable under the circumstances of his need for medical leave due to his serious health condition.

69. VERIZON denied MONROE the FMLA benefits to which he was entitled by firing him while he was on FMLA-protected leave.

70. There is a causal connection between MONROE's protected FMLA activity and VERIZON's adverse employment actions.

71. VERIZON knowingly and deliberately engaged in intentional violations of the FMLA and further, acted with malice and/or with reckless indifference to MONROE's rights under the FMLA.

72. As a direct and proximate result of VERIZON's adverse actions, MONROE has suffered damages, including but not limited, to loss of past and future income and loss of employee benefits.

**WHEREFORE**, Plaintiff, ERIC MONROE requests that this Court enter its Judgment against Defendant, VERIZON COMMUNICATIONS, INC., in whatever amount of damages is shown to be established by the proofs in this cause, together with lost wages, compensatory damages, liquidated damages, interest, costs, and attorney fees, as well as any equitable relief shown to be established by the proofs in this cause.

**DEMAND FOR TRIAL BY JURY IS HEREBY MADE.**

### COUNT III: VIOLATION OF FAMILY AND MEDICAL LEAVE ACT, 29 U.S.C. §2601 *et seq.* — RETALIATION

73. MONROE incorporates Paragraphs 1 through 51 of this Complaint.

74. MONROE is an eligible "employee" as defined by the FMLA. 29 U.S.C. § 2611(2)(B)(ii).

75. VERIZON is an "employer" as defined by the FMLA. 29 U.S.C. § 2611(4).

76. Under FMLA, MONROE was entitled to twelve (12) weeks of medical leave for any twelve (12) month period. 29 U.S.C. § 2612(a)(1).

77. The FMLA prohibits employers from retaliating against employees who exercise their FMLA rights. 29 U.S.C. § 2615(a)(2).

78. As a result of MONROE taking an FMLA leave and exercising his FMLA rights, VERIZON retaliated against him and violated the FMLA in ways which include, but are not limited to, the following:

    a.    Refusing to allow MONROE to return to work;

    b.    Terminating his employment; and

    c.    Otherwise discriminating against MONROE because he availed himself of his FMLA rights.

79. There is a causal connection between MONROE's protected FMLA activity and VERIZON's adverse employment actions.

80. VERIZON knowingly and deliberately engaged in intentional violations of the FMLA and further, acted with malice and/or with reckless indifference to MONROE's rights under the FMLA.

81. As a direct and proximate result of Defendant's adverse actions, MONROE has suffered damages.

**WHEREFORE**, Plaintiff, ERIC MONROE requests that this Court enter its Judgment against Defendant, VERIZON COMMUNICATIONS INC., in whatever amount of damages is shown to be established by the proofs in this cause, together with lost wages, compensatory damages, liquidated damages, interest, costs, and attorney fees, as well as any equitable relief shown to be established by the proofs in this cause.

**DEMAND FOR TRIAL BY JURY IS HEREBY MADE.**

            *s/ Tad T. Roumayah*
            TAD T. ROUMAYAH (P74081)
            SOMMERS SCHWARTZ, P.C.
            Attorneys for Plaintiff
            One Towne Square, Suite 1700
            Southfield, Michigan 48076
            (248) 355-0300

Dated:  June 14, 2017

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**ERIC MONROE**, an Individual,

       Plaintiff,

v

**CELLCO PARTNERSHIP d/b/a VERIZON WIRELESS,**
a Delaware Corporation,

       Defendant.
_____/

SOMMERS SCHWARTZ, P.C.
By:  Tad T. Roumayah (P74081)
Attorneys for Plaintiff
One Towne Square, Suite 1700
Southfield, Michigan 48076
troumayah@sommerspc.com
_____/

## DEMAND FOR TRIAL BY JURY

**NOW COMES** Plaintiff, ERIC MONROE, by and through his attorneys, SOMMERS SCHWARTZ, P.C., and hereby demands a trial by jury relative to the above matter.

                              *s/ Tad T. Roumayah*
                              TAD T. ROUMAYAH (P74081)
                              SOMMERS SCHWARTZ, P.C.
                              Attorneys for Plaintiff
                              One Towne Square, Suite 1700
                              Southfield, Michigan 48076
Dated:  June 14, 2017           (248) 355-0300